# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NATHAN ANTOINE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CIVIL NO. 07-cv-453-DRH ) |
| ROGER E. WALKER, JR., *et al.*, | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

Plaintiff Nathan Antoine brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.

### THE COMPLAINT

In January 2005, Antoine was placed in the Segregation Housing Unit in the Menard Correctional Center for the improper use and possession of a typewriter. Though he was eventually cleared of the charges, Antoine was placed into segregation for the first of three times during the investigation. Antoine asserts that this incident began a chain of events that culminated in medical indifference and due process violations, all done in retaliation against him.

Antoine's lengthy complaint and voluminous exhibits can be boiled down into repeated assertions concerning conditions of confinement, medical indifference, retaliation, and conspiracy. Antoine now seeks injunctive, compensatory, and punitive relief from twenty different defendants. To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court finds it appropriate to break the claims the complaint into numbered counts, as shown below. The parties and the Court will use

these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

>    **COUNT 1:** Against Defendants Walker, Uchtman, Martin, Ramos, McDaniel, Gladson, Grubman, Gerdes, Mueller, Spiller, Ohlau, Goforth and Murray for exposing him to hazardous environmental conditions, in violation of his rights under the Eighth Amendment.
>
>    **COUNT 2:** Against Defendants Walker, Martin, Condor, Gladson, Grubman, Gerdes, Mueller and Ohlau for not ensuring proper medical treatment, in violation of his rights under the Eighth Amendment.
>
>    **COUNT 3:** Against Defendants Uchtman, Ramos, Mitchell, Robertson, Mueller, Spiller and Ohlau for unjustified disciplinary actions, in violation of his rights under the Fourteenth Amendment.
>
>    **COUNT 4:** Against Defendants Walker, Uchtman, Ramos, McDaniel, Petite, Robertson, Bradley, Mueller, Spiller, Ohlau and Thomas for taking retaliatory action against him, in violation of his rights under the First Amendment.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

>    (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>    (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>        (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>        (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under

§ 1915A; portions of this action are subject to summary dismissal.

**COUNT 1 – ENVIRONMENTAL HAZARDS**

Antoine's first claim is that he was exposed to hazardous environmental conditions in the North Cellhouse, which led to nose bleeds, coughing up blood, and unspecified heart problems.[1] His first grievance over these conditions was sent directly to Defendant Walker on March 7, 2005 (¶¶ 6, 8).[2] A copy of that grievance was forwarded to Defendant Mueller on April 11, 2005 (¶ 10). Subsequently, on orders from Defendants Walker and Uchtman, personnel assigned to that cellhouse were directed to clean up the areas complained of by Antoine (¶ 11). On April 29, Antoine received a response to his original grievance that was sent to Walker; he was directed to follow the proper grievance procedure through the institution (¶ 15). On July 13, Antoine forwarded a letter to Defendant Murray, the grievance officer (¶ 17). On July 21, Murray returned the grievance to Antoine without a response; Antoine then sent that response to the Administrative Review Board, claiming that the institution refused to address the issue (¶ 18). On July 22, Antoine filed a grievance against Defendants Murray and Goforth, charging that they had failed to provide an adequate response to his grievance over the hazardous conditions; that grievance was sent to Defendants Mueller and Spiller (¶ 19).

On August 3, Defendant Grubman reported in a letter that Defendant Gerdes had found the cellhouse to be medically acceptable (¶ 21). On August 7, Antoine sent a second letter directly to Defendant Walker regarding the hazardous conditions, as well as the indifference exhibited by staff members regarding these conditions (¶ 22-23). On August 18, Antoine filed a grievance against

---

[1] The only description in the complaint of these allegedly hazardous conditions is "contamination of dust, dirt and insects" (¶ 31).

[2] Unless otherwise noted, all paragraph references are to the enumerated paragraphs in Antoine's Statement of Claim, which begins on page 38 of his complaint (Doc. 1-2, p. 7).

Mueller and Spiller for failing to address his prior grievance about the hazardous conditions (¶ 26). On September 2, he filed yet another grievance against Mueller and Spiller, this time charging them with destruction of his prior grievances; this grievance was sent to Defendant Ohlau (¶ 30). On September 4, Antoine filed a grievance against Defendants Grubman, Gerdes, Martin, Ramos and McDaniels for their collective failure to address the environmental conditions (¶ 31). On September 15, Antoine filed a grievance against Defendant Ohlau for misplacing or destroying the September 4 grievance (¶ 35). On September 22, Antoine wrote to the Grievance Officer in an attempt to locate his first and second grievances about the environmental conditions (¶ 38). On September 30, Antoine filed his fourth grievance over the environmental conditions (¶ 42). On October 29, Antoine filed a grievance against Defendants Grubman, Gladson, Gerdes and Martin, asserting that they had made false representations to Defendant Murray about the environmental conditions (¶ 47).

In a case involving conditions of confinement in a prison, two elements are required to establish violations of the Eighth Amendment's cruel and unusual punishments clause. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective element, establishing a defendant's culpable state of mind. *Id.*

In this case, Antoine alleges that the dirt, dust and insects in the North Cellhouse constitutes a hazardous condition that created an excessive risk to his health. However,

> [m]any Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans. It would be inconsistent with this principle to impose upon prisons in the name of the Constitution a duty to take remedial measures against pollution or other contamination that the agencies responsible for the control of these hazards do not think require remedial measures.

*Carroll v. DeTella*, 255 F.3d 470, 472-73 (7th Cir. 2001) (internal citations omitted). "[F]ailing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not [cruel and unusual punishment]." *Id.* at 473. *See also McNeil v. Lane*, 16 F.3d 123, 125 (7th Cir. 1993); *Steading v. Thompson*, 941 F.2d 498 (7th Cir. 1991); *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988); *Clemmons v. Bohannon*, 956 F.2d 1523, 1527 (10th Cir. 1992) (en banc).

Consequently, Antoine has failed to state a claim upon which relief may be granted with respect to the environmental conditions of the North Cellhouse. Likewise, he has no constitutional claim regarding the failure of any official to respond to his grievances over this issue. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." ); *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982). Accordingly, his claim regarding the conditions of the North Cellhouse will be dismissed from this action with prejudice.

## COUNT 2 – MEDICAL CARE

Antoine's second claim is closely related to the first: he alleges that the conditions in the North Cellhouse caused him numerous medical problems, for which he received insufficient treatment.

On March 1, 2005, Antoine was examined by Nurse Practitioner Mary Kohring (not a defendant) regarding "nasal bleeding, blood in ears and coughing up blood from the mouth, including heart problems" (¶ 6). On March 16, he was examined again by Kohring for nose bleeds and a heard condition (¶ 9). On May 3, an outside radiology service diagnosed a chest x-ray ordered by Kohring; they determined that Antoine suffers from chronic obstructive pulmonary disease and central granulomata (¶ 16). On July 28, Antoine was again examined by unspecified medical staff regarding his respiratory problems and traces of blood in his nasal cavities (¶ 20). On August 7,

Antoine wrote to Defendant Walker, complaining about the medical staff's indifference to his heal problems (¶¶ 22-23). On August 27, Antoine wrote to Defendant Mueller to complain about the lack of response to his previous grievances about medical care; that grievance was forwarded to Defendant Condor (¶ 28). On September 4, Antoine filed a grievance against Defendants Grubman, Gerdes and Martin regarding his medical treatment and related environmental hazards in the cellhouse (¶ 31). On September 15, Antoine filed a grievance against Defendant Ohlau for failure to address his grievances regarding health care (¶ 35). On September 21, Antoine was once again examined by unspecified medical staff for his respiratory problems, but they did not prescribe any medical or treatment (¶ 37). On September 26, he was examined again for his respiratory symptoms (¶ 39). On September 30, Antoine received a diagnosis from another outside radiology service, which stated that he suffered from shortness of breath and hyperinflation of the lungs (¶ 41). On October 29, Antoine filed a grievance against Defendants Grubman, Gladson, Gerdes and Martin, asserting that they had made false representations to Defendant Murray about his medical condition (¶ 47). On March 6, 2006, Antoine submitted a request for medical treatment, but he received no response.

Based on these events, Antoine alleges that each of these individuals acted with deliberate indifference to his serious medical needs, in violation of his rights under the Eighth Amendment.

> A deliberate indifference claim requires both an objectively serious risk of harm and a subjectively culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A deliberate indifference claim premised upon inadequate medical treatment requires, to satisfy the objective element, a medical condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno*, 414 F.3d at 653. The subjective component of a deliberate indifference claim requires that the prison official knew of "a substantial risk of harm to the inmate and disregarded the risk." *Id.*; *Farmer*, 511 U.S. at 834. Mere medical malpractice or a

> disagreement with a doctor's medical judgment is not deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Greeno*, 414 F.3d at 653; *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996). Still, a plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" a medical condition. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (citation omitted).

*Edwards v. Snyder*, 478 F.3d 827, 830-31 (7th Cir. 2007).

In this case, the complaint and exhibits clearly indicate that Antoine received regular medical attention for his various symptoms and conditions. Further, he makes no allegations that any specific individual on the medical staff denied him medical treatment. Finally, as stated above, he has no constitutional claim regarding the failure of any official to respond to his grievances over his medical care. *Antonelli*, 81 F.3d at 1430. *See also Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) (prison administrators are "entitled to relegate to the prison's medical staff the provision of good medical care"). Thus, Antoine has failed to state a claim upon which relief may be granted with respect to his medical care, and this claim will be dismissed from this action in its entirety.

## COUNT 3 – DISCIPLINARY ACTIONS

Three separate disciplinary events are raised in this action. The first occurred on April 17, 2005; Antoine received a ticket for damage or misuse of property involving his typewriter. He was found guilty and punished with 60 days in segregation (¶ 12). He filed two grievances over this incident (¶ 14). He later filed another grievance against Defendants Mueller and Spiller for their failure to address his first grievances; this grievance was sent to Defendant Ohlau (¶ 30).

Following a shake-down on September 7, 2007, Antoine received a ticket for possession of unauthorized personal information and unauthorized property (¶ 32). That ticket was written by Defendant Robertson and approved by Defendant Ramos (¶ 33). Antoine was found guilty by

Defendant Mitchell and punished with 60 days in segregation. Also on September 7, Defendant Robertson issued a second disciplinary ticket for insolence (¶ 33). Again, Antoine was found guilty and punished with an additional 30 days in segregation. He filed a grievance over these actions (¶¶ 33, 36). On September 30, Defendant Uchtman denied his request for a reduction in his segregation time (¶¶ 43, 50).

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship...in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit Court of Appeals has adopted an extremely stringent interpretation of *Sandin*. In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *Id.* In the view of the Seventh Circuit Court of Appeals, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small." *Id.* Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

In the case currently before the Court, Antoine was sent to disciplinary segregation for an

aggregate period of 150 days in connection with three separate disciplinary actions. Nothing in the complaint or exhibits suggests that the conditions that he had to endure while in disciplinary segregation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois. Therefore, his due process claim is without merit, and this claim will be dismissed with prejudice in its entirety.

### COUNT 4 – RETALIATION

In his final claim, Antoine alleges that the September disciplinary actions were taken against him in retaliation for his filing of grievances over conditions in the North Cellhouse and his related medical complaints. He further alleges that the September 7 shake-down was retaliatory in nature.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Bridges v. Gilbert*, 557 F.3d 541, 552-53 (7th Cir. 2009); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). To succeed on this claim, Antoine must establish that "(1) he engaged in activity protected by the First Amendment, (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges*, 557 F.3d 541, 2009 WL 529573, *3; *see also Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). "An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005). However, the burden on the prisoner is "high" as he must show that his protected conduct was a motivating factor for the retaliation. *See Babcock*, 102 F.3d at 275. Moreover, "the ultimate question is whether events

would have transpired differently absent the retaliatory motive." *Id.* If the same action would have occurred regardless of the retaliatory motive, the claim fails. *See Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004).

In the complaint, Antoine alleges that in retaliation for his grievances, Defendants Ramos, McDaniels, Robertson and Bradley acted in concert to conduct a cell shake-down and issue the subsequent disciplinary tickets (¶¶ 32, 33). Antoine later filed grievances complaining about their retaliatory actions, followed by additional grievances against those who failed to respond to his initial grievances (¶¶ 30, 34, 35, 40, 44, 45). Applying the above standards to the allegations in the complaint, the Court is unable to dismiss this retaliation claim against Ramos, McDaniels, Robertson and Bradley at this time. However, a statement that Defendant Mitchell presided over the hearings and found him guilty does not suggest that Mitchell acted with retaliation. Thus, he will be dismissed from this claim.

Furthermore, those who received grievances about the past actions of others are not liable, because "public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). *See also Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of respondeat superior does not apply to § 1983 actions). Thus, Defendants Mueller, Spiller, Ohlau, Uchtman and Walker will be dismissed from this claim.

Finally, at the beginning of his statement of claim, Antoine makes a bald assertion that Defendant Petite "initiated the malicious retaliation and conspiracy" towards him (¶ 5).[3] He makes no other allegations against Petite throughout the entire statement of claim, and an action fails to

---

[3] Similar allegations are made in the "preliminary statement" portion of the complaint (*see* Doc. 1, p. 26).

state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). This means that a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. ___, 2009 WL 1361536, *13 (May 18, 2009). Antoine has failed to make any such allegations against Petite, so he will be dismissed from this claim.

**OTHER DEFENDANTS**

At three separate places in the complaint, Antoine mentions Defendant Thomas. First, Thomas interviewed Antoine in January 2005 regarding Antoine's prior allegation of retaliation against him (¶ 4). Next, on April 13, 2005, Thomas interviewed Antoine regarding allegations made by another inmate that Antoine was attempting to make a knife to assault an officer (¶ 12); Antoine was cleared of those suspicions. Third, Thomas was involved with investigating Antoine's complaints of retaliatory actions in the North Cellhouse (¶ 27). None of these statements constitutes a viable constitutional claim against Thomas, and he will be dismissed from this action.

Finally, Antoine includes Roger Waller in his list of defendants, but the statement of claim makes no allegations against him. The reason that Plaintiffs, even those proceeding pro se, for whom the Court is required to liberally construe their complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003) (a "short and plain" statement of the claim suffices under Fed. R. Civ. P. 8 if it notifies the defendant of the principal events upon which the claims are based); *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000) ("notice pleading requires the plaintiff to allege just enough to put the defendant on notice of facts providing

a right to recovery"). Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*,143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). Thus, Waller will be dismissed from this action.

### THREE STRIKES

As discussed above, Antoine has failed to state a claim with respect to the conditions in the North Cellhouse, his medical care, or the disciplinary proceedings. Within the Seventh Circuit, dismissal of these claims counts as a strike for purposes of § 1915(g). *See George v. Smith,* 507 F.3d 605, 607-08 (7th Cir. 2007); *Boriboune v. Berge,* 391 F.3d 852, 855 (7th Cir. 2004). The Court notes that Antoine has had at least two other prisoner actions dismissed, or partially dismissed, on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted. *See Antoine v. Uchtman*, Case No. 06-cv-207-JPG (S.D. Ill., filed March 16, 2006); *Antoine v. Imhoff*, Case No. 00-cv-623 (N.D. Ill., filed June 19, 2000).

Antoine is **ADVISED** that he has now accumulated three strikes. He may not proceed in forma pauperis in any future cases filed in the federal courts, unless he is in imminent danger of serious physical harm. *See* 28 U.S.C. § 1915A.

### DISPOSITION

**IT IS HEREBY ORDERED** that **COUNT 1, COUNT 2** and **COUNT 3** are **DISMISSED** from this action with prejudice. Because no claims remain pending against them, Defendants **CONDOR, GERDES, GLADSON, GOFORTH, GRUBMAN, MARTIN, MITCHELL, MUELLER, MURRAY, OHLAU, PETITE, SPILLER, THOMAS, UCHTMAN, WALKER**, and **WALLER** are **DISMISSED** from this action with prejudice. As explained above, within the Seventh Circuit, dismissal of these claims and defendants count as a strike for purposes of § 1915(g).

*See George* 507 F.3d at 607-08; *Boriboune,* 391 F.3d at 855.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **BRADLEY, McDANIEL, RAMOS** and **ROBERTSON**. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on **BRADLEY, McDANIEL, RAMOS** and **ROBERTSON** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received. If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for purposes of supervising discovery issues, with dispositive motions and motions for appointment of counsel to be handled by the undersigned district judge.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** of his continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts during the pendency of this action. This notification shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs. Failure to provide such notice may result in dismissal of this action. *See* FED.R.CIV.P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 27, 2009.**

/s/ DavidRHerndon
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**