IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NATHAN ANTOINE, IDOC # N40028, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL NO. 07-453-GPM |
| ) | |
| ROGER E. WALKER, JR., et al., ) | |
| ) | |
| Defendants. ) | |

# <u>MEMORANDUM AND ORDER</u>

**MURPHY, District Judge:**

### I. INTRODUCTION

This matter is before the Court on the motion for summary judgment brought by Defendants Anthony Ramos, Charles McDaniel, Robert M. Robertson, and Clifford Bradley (Doc. 43). Plaintiff Nathan Antoine, a prisoner in the custody of the Illinois Department of Corrections ("IDOC") who is serving a sentence of sixty years' imprisonment for aggravated criminal sexual assault and who currently is incarcerated at the Stateville Correctional Center ("Stateville"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights by persons acting under color of state law. At issue in this case are two incidents that occurred in September 2005, while Antoine was imprisoned in the North One Cellhouse at the Menard Correctional Center ("Menard"). At the time the incidents giving rise to this case occurred, Ramos, McDaniel, Robertson, and Bradley were employees of the IDOC, to wit: Ramos was a major assigned to the North One Cellhouse at Menard, and McDaniel's supervisor; McDaniel was a sergeant assigned to the North One Cellhouse, and the supervisor of

Robertson and Bradley; and Robertson and Bradley were correctional officers assigned to the North One Cellhouse.

The first incident at issue in this case occurred on September 7, 2005, when Robertson and Bradley conducted a "shakedown" (search) of Antoine's cell in the North One Cellhouse at Menard. In the course of the shakedown, contraband was found, in the form of a sewing needle, hidden in an ink pen, that Antoine was not permitted to have in his cell and transcripts of court proceedings belonging to other prisoners. Antoine was issued a disciplinary ticket to which he subsequently pleaded guilty and was sentenced to sixty days' disciplinary segregation. The other incident at issue in this case occurred on September 8, 2005, when Robertson issued a disciplinary ticket to Antoine allegedly for threatening to sue Robertson in federal court in connection with the September 7 shakedown of Antoine's cell. As a result of the September 8 ticket, Antoine received thirty additional days' disciplinary segregation, so that the combined sentence for both the September 7 ticket and the September 8 ticket was ninety days' disciplinary segregation. In this lawsuit Antoine claims that the September 7 shakedown of his cell and the disciplinary ticket that resulted from the shakedown, as well as the September 8 disciplinary ticket, were in retaliation for grievances Antoine had filed complaining about the allegedly unsanitary conditions in the North One Cellhouse. It appears that at the time this case was filed Antoine was confined at Menard but since has been transferred to Stateville. Ramos, McDaniel, Robertson, and Bradley now seek summary judgment as to Antoine's retaliation claim on the grounds that, prior to the September 2005 incidents giving rise to this case, they were unaware of any grievances filed by Antoine concerning conditions in the North One Cellhouse. Additionally, Ramos, McDaniel, Robertson, and Bradley contend that they are shielded by the doctrine of qualified immunity from liability to Antoine in connection with the

September 7 shakedown of Antoine's cell and the disciplinary ticket that resulted from the shakedown. The motion for summary judgment has been fully briefed and accordingly the Court now rules as follows.

## II. ANALYSIS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, generally at any time until thirty days after the close of discovery in a case, "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). The rule provides further that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." *Id*. Under Rule 56, "[a] party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the . . . presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1)(A)-(B). The rule provides also that "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). With respect to affidavits and declarations, the rule provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In considering a summary judgment motion, a court must draw all reasonable inferences in the light most favorable to the non-moving party. *See Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010). On summary judgment a court may not make credibility determinations or weigh the evidence, because these are tasks for a factfinder. *See Morfin v. City of*

*E. Chicago*, 349 F.3d 989, 999 (7th Cir. 2003). In evaluating a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

In general, a prisoner has a right under the First Amendment to challenge the conditions of his or her confinement by, for example, filing grievances and lawsuits, and it is unlawful for prison officials to retaliate against a prisoner for exercising this right. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267, 274-75 (7th Cir. 1996). To show unlawful retaliation, a plaintiff must prove three elements: first, that he or she engaged in constitutionally protected conduct, e.g., filing grievances or lawsuits challenging the conditions of the plaintiff's confinement in prison; second, that but for the protected conduct a defendant would not have taken an adverse action against the plaintiff; and third, that the plaintiff suffered a deprivation because of the defendant's action. *See Gunville v. Walker*, 583 F.3d 979, 983-84 & n.1 (7th Cir. 2009).[1] In the past, controlling authority in this Circuit did not require but-for causation in a case involving alleged retaliation for the exercise of First Amendment rights. *See, e.g., Hasan v. United States Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)) ("[A] plaintiff who complains that he was

---

1. The Court recognizes that in cases involving an alleged prior restraint on speech or conduct protected by the First Amendment, it may be misleading to speak of "retaliation," because an infringement of First Amendment rights occurs when a governmental actor deters future protected activity as well as when the actor punishes past speech. *See Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009). In this case, however, there is no claim that Ramos, McDaniel, Robertson, and Bradley threatened to punish Antoine if he engaged in constitutionally protected conduct in the future, save perhaps by implication, and therefore the Court believes it is proper to characterize this suit as one for "retaliation."

retaliated against for exercising his right of free speech need not prove that, had it not been for that exercise, the adverse . . . action that he is charging as retaliation would not have occurred. All he need prove is that his speech was a 'motivating factor' in the [defendant's] decision to take the adverse action."). However, the Supreme Court of the United States clarified recently that, unless a federal statute provides otherwise, the plaintiff bears the burden of demonstrating but-for causation in suits brought under federal law. *See Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009) (to prevail in an action under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that [an unlawful motive] was the 'but-for' cause of the challenged . . . decision."); *Waters v. City of Chicago*, 580 F.3d 575, 584 (7th Cir. 2009) ("[T]he decisions which say that a plaintiff need only prove that his speech was a motivating factor in the defendant's decision [to retaliate] do not survive *Gross*[.]").

This Circuit's pre-*Gross* case law held that, in cases where direct evidence of retaliation is lacking, once a prima facie case of retaliation has been made, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for a challenged act, consistent with the familiar burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for use in employment discrimination cases brought under the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq*. *See, e.g., Spiegla v. Hull*, 371 F.3d 928, 943 n.10 (7th Cir. 2004) (quoting *Johnson v. University of Wis.-Eau Claire*, 70 F.3d 469, 482 (7th Cir. 1995)) ("[I]n this Circuit 'the causation analysis for a [42 U.S.C.] § 1983 retaliation claim tracks the causation analysis for a Title VII retaliation claim.'"). However, the United States Court of Appeals for the Seventh Circuit noted recently, "[w]hether such a burden shifting analysis survives the Supreme Court's declaration

in *Gross* in non-Title VII cases, remains to be seen." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 501 (7th Cir. 2010). This Court need not resolve this question because in *Kodish* the Seventh Circuit Court of Appeals clarified what constitutes "direct," rather than "indirect," evidence of retaliation. The *Kodish* court explained that, while the evidence must point directly to a retaliatory reason for the adverse action, "direct proof of discrimination is not limited to near-admissions by the [defendant] that its decisions were based on a proscribed criterion (e.g., 'You're too old to work here,'), but also includes circumstantial evidence which suggests [retaliation] through a longer chain of inferences." *Id*. The evidence presented "may require a chain of inference, but it is direct evidence nevertheless." *Id*. Thus, circumstantial evidence of retaliatory motive, such as the timing of events or the disparate treatment of similar individuals, though requiring a chain of inference, nonetheless constitutes direct evidence of retaliation. *See Zitzka v. Village of Westmont*, No. 07 C 0949, 2010 WL 3863237, at *23 (N.D. Ill. Sept. 28, 2010) (citing *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006)). Finally, "[i]n order to establish that a defendant retaliated against a plaintiff because of a protected constitutional right, a plaintiff must demonstrate that the defendant knew of . . . the plaintiff's constitutional activities." *Stagman v. Ryan*, 176 F.3d 986, 999 (7th Cir. 1999). Accordingly, where there is no proof that a decision-maker responsible for an adverse action against a plaintiff was aware of any protected activity on the plaintiff's part, a retaliation claim must fail. *See, e.g., Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081-82 (7th Cir. 1992) (affirming the dismissal of a claim by a former employee of a state utility commission that the new chairman of the commission discharged her because of her political affiliation where the former employee produced no evidence that the chairman was aware of her political affiliation).

According to an affidavit given by Antoine in opposition to summary judgment, Antoine filed grievances about the allegedly unsanitary conditions in the North One Cellhouse at Menard in January 2005, March 2005, April 2005, and May 2005. *See* Doc. 84-1 at 2 ¶¶ 7-10.[2] It appears from the record that Tyone Murray, the grievance officer at Menard, discussed Antoine's April 2005 grievance with McDaniel, who informed the grievance officer that the wings in the North One Cellhouse are cleaned regularly and that prisoners in the North One Cellhouse are given access to cleaning supplies to use in cleaning their cells. *See* Doc. 84-3 at 1. According to Antoine's affidavit, in September 2005 Murray advised Antoine that the grievances Antoine had filed in March 2005, April 2005, and May 2005 had been lost, whereupon Antoine filed a new grievance complaining about unsanitary conditions in the North One Cellhouse on September 4, 2005. *See* Doc. 84-1 at 2 ¶¶ 12-13; Doc. 84-2 at 1-3. A notation on Antoine's September 4 grievance by one B. Mueller, a grievance counselor at Menard, reflects that on September 6, 2005, the grievance counselor discussed Antoine's September 4 grievance with "cellhouse supervisors" in the North One Cellhouse, who advised the grievance counselor that inspections of the North One Cellhouse "are done monthly to ensure [the] cellhouse is clean." Doc. 84-2 at 1. The cellhouse supervisors with whom the grievance counselor conferred regarding Antoine's September 4 grievance doubtless were Ramos and McDaniel, who, as already has been noted, had supervisory authority over Robertson and Bradley. As already has been discussed, on September 7, 2005, just one day after the grievance

---

2. The page numbers from documents in the record of this case that are cited by the Court in this Order are the page numbers assigned to those documents by the Court's CM/ECF system and that appear as part of the header of each page of the documents, rather than the page numbers that appear at the foot of each page of the documents. To minimize confusion, the Court has cited to the paragraph number where cited material may be found, wherever it is possible to do so (e.g., Antoine's affidavit).

counselor discussed Antoine's September 4 grievance with Ramos and McDaniel, Robertson and Bradley conducted a shakedown of Antoine's cell; in his affidavit Antoine avers that, immediately following the shakedown and the discovery of contraband in Antoine's cell, Robertson told Antoine "I finally got your grievance[-]filing ass." Doc. 84-1 at 2 ¶ 16. Drawing a reasonable inference in the light most favorable to Antoine, the Court concludes that, were a factfinder to credit Antoine's evidence, it could infer on the basis of Robertson's alleged comment following the shakedown of Antoine's cell that Robertson had been advised by Ramos or McDaniel or both about one or more of Antoine's grievances.

Thus, the record discloses evidence that Ramos, McDaniel, and Robertson had knowledge of the grievance Antoine filed on September 4, 2005.[3] Also, the fact that Robertson performed a shakedown of Antoine's cell only one day after Robertson likely was informed of Antoine's September 4 grievance by Ramos or McDaniel obviously constitutes a chronology of events that supports an inference of retaliation. However, where Antoine's retaliation claim as to the shakedown of his cell founders is on the issue of "but-for" causation. The undisputed evidence of record in this case is that, prior to the shakedown of Antoine's cell, IDOC personnel had been informed by Antoine's cellmate, Barney, that Antoine was in possession of contraband in his cell. From Antoine's deposition testimony:

> Q. So do you know whether prison staff are allowed to shake down your cell whenever they want?
> A. Yes. If they receive information or if they see anything that's out of place that might be contraband, yes.
> Q. So, in this case, didn't your cellmate, Barney, provide information that you had contraband in your cell to correctional officers or to prison staff?

---

3. Significantly, the record does not disclose evidence that Bradley had knowledge of Antoine's September 4 grievance in advance of the shakedown of Antoine's cell on September 7, 2005.

> A. Yes .... By record and log, at the personal property of Menard Correctional Center, Inmate Barney received a TV for his information, and it should be logged in the personal property 2005 log book.
>
> * * * *
>
> Q. All right. So you're alleging that your cellmate, Barney, only reported the contraband items that you had because he was going to be rewarded with a television from staff?
> A. He was awarded [sic]. The TV was already in the cell.
> Q. All right. But it's undisputed in your viewpoint that Barney did report that you had contraband to correctional officers and then your cell was searched?
> A. Yes. How can I specifically state, because they went to the legal box and went to the pen only. They didn't shake down anything else in the cell.
> Q. Okay. So they knew exactly where the contraband items were?
> A. Where to go.
> Q. So they only searched your –
> A. Legal box, small legal box and the pen.

Doc. 44-1 at 8-9. In light of Antoine's own testimony, it is impossible as a matter of law for Antoine to meet his burden to show that retaliatory motive was the but-for cause of the September 7 shakedown of Antoine's cell. It is true, of course, that "[a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] § 1983 even if the act, when taken for a different reason, would have been proper." *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005). *See also Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (noting that "otherwise permissible conduct can become impermissible when done for retaliatory reasons."). Here, however, where there is clear evidence of a legitimate, non-retaliatory reason for the shakedown of Antoine's cell, no reasonable jury could find for Antoine on his claim that the shakedown was in retaliation for filing a grievance. Accordingly, the Court will grant summary judgment for Ramos, McDaniel, Robertson, and Bradley on Antoine's retaliation claim arising out of the shakedown of Antoine's cell.

The Court turns next to Antoine's claim for retaliation in connection with the incident on September 8, 2005, in which Robertson wrote Antoine a disciplinary ticket. According to the adjustment committee report concerning the ticket, when Robertson came to Antoine's cell to take him to segregation in connection with the disciplinary ticket issued to Antoine the previous day for possession of contraband, Antoine allegedly told him, "I know I'm going to seg, and you'll read all about it in federal court." Doc. 84-8 at 1. Robertson interpreted Antoine's alleged remark as a threat to sue him, Robertson, in federal court, whereupon Robertson charged Antoine with intimidation or threats, in violation of prison discipline. *See* Doc. 84-1 at 3 ¶ 21.[4] Ultimately the adjustment committee found Antoine guilty of a lesser offense, insolence, in connection with the September 8 ticket and, as noted, sentenced Antoine to thirty days' disciplinary segregation for the offense. *See* Doc. 84-8 at 1; Doc. 84-1 at 3 ¶ 23. Somewhat paradoxically, Antoine argues both that he did not make the remark that supposedly provoked the September 8 ticket and that, if he did make the remark at issue, the remark was protected speech under the First Amendment. If it is Antoine's position that he never made the remark that formed the basis for the September 8 ticket, then Antoine's retaliation claim in connection with the ticket runs into the bar of *Heck v. Humphrey*, 512

---

4. It is unclear from the record whether Bradley or McDaniel witnessed either Antoine's alleged remark on September 8 or the issuance of the ticket for the remark. Antoine claims that Bradley was present when Robertson supposedly told Antoine that "You is [sic] going to die in this prison." Doc. 84-1 at 3 ¶ 18. McDaniel is alleged to have refused to talk to Antoine before the latter was taken to the segregation unit at Menard. *See id*. at 3 ¶ 20. Neither of these facts tend to show that Bradley and McDaniel participated in alleged retaliation against Antoine on September 8. Antoine adduces no facts showing that Ramos had any involvement at all in the September 8 incident. A state actor's personal involvement in an alleged deprivation of constitutional rights is, of course, an essential element of a claim under 42 U.S.C. § 1983. *See Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.").

U.S. 477 (1994). Conversely, if it is Antoine's claim that he made the remark at issue, but that it was unlawful under the First Amendment for Robertson to punish him for the remark, then Antoine's retaliation claim raises the question of whether the remark was protected speech for purposes of a First Amendment claim. In either case, Antoine's retaliation claim in connection with the September 8 ticket fails as a matter of law.

In general, a plaintiff convicted or sentenced for an offense may not bring an action for damages under 42 U.S.C. § 1983 where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," save when "the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487.[5] It is now well settled that the rule of *Heck v. Humphrey* extends to civil rights claims arising out of prison disciplinary hearings, if those claims necessarily call into question the validity of sentences imposed by prison authorities for infractions of prison discipline. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (a prisoner's claim for damages "based on allegations of deceit and bias on the part of the decisionmaker [in a prison disciplinary hearing] that necessarily imply the invalidity of the punishment imposed . . . is not cognizable under § 1983."); *Dixon v. Chrans*, 101 F.3d 1228, 1230-31 (7th Cir. 1996) (a claim for damages that necessarily questions the validity of a

---

5. It perhaps is worth pointing out that, although the parties have not addressed the applicability of *Heck* to Antoine's retaliation claim concerning the disciplinary ticket issued to Antoine on September 8, 2005, the Court can raise the issue sua sponte. *See Knowlin v. Thompson*, 207 F.3d 907, 908-09 (7th Cir. 2000) (affirming a district court's sua sponte dismissal of a case under 42 U.S.C. § 1983 as barred by *Heck*); *Studio Art Theatre of Evansville, Inc. v. City of Evansville, Inc.*, 76 F.3d 128, 130-31 & n* (7th Cir. 1996) (acknowledging a district court's power to dismiss a case sua sponte as being barred by *Heck*, but not reaching the issue of whether the case before the reviewing court was *Heck*-barred because the case was barred by res judicata); *Handy v. Johnson*, No. 96 C 3341, 1999 WL 417381, at *4 (N.D. Ill. June 15, 1999) (recognizing the court's authority to raise the issue of *Heck* sua sponte but declining to do so in light of the "late stage of the proceedings").

sentence imposed by a prison disciplinary committee is barred by *Heck*); *Clayton-El v. Fisher*, 96 F.3d 236, 242-45 (7th Cir. 1996) (a prisoner's claim against prison officials under Section 1983 for alleged violations of the prisoner's procedural due process rights when placing the prisoner in segregation was *Heck*-barred); *Miller v. Indiana Dep't of Corr.*, 75 F.3d 330, 331 (7th Cir. 1996) (holding that a state prisoner's federal civil rights suit seeking damages for an alleged denial of due process when the prisoner was not given a hearing before being placed in a prisoner classification that rendered the prisoner ineligible to earn good-time credits was barred by *Heck*). Whether a plaintiff's claim is *Heck*-barred should not be evaluated by determining if there is a "theoretical possibility" that the plaintiff can advance a theory of liability that does not undermine the legitimacy of his or her criminal conviction, but rather should be evaluated by seeing whether the plaintiff's theory includes "allegations that are inconsistent with the conviction's having been valid"; if the latter, "*Heck* kicks in and bars his civil suit." *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) (citing *Ryan v. DuPage County Jury Comm'n*, 105 F.3d 329, 330-31 (7th Cir. 1996)). Thus, even where a claim is theoretically compatible with the plaintiff's underlying conviction, it may nevertheless be *Heck*-barred "if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction[.]" *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006). Too, "[i]t is irrelevant that [a plaintiff] disclaims any intention of challenging his conviction," because the *Heck* bar applies "if he makes allegations that are inconsistent with the conviction's having been valid[.]" *Okoro*, 324 F.3d at 490. In other words, a plaintiff can trigger the *Heck* bar by making allegations that necessarily imply the invalidity of a prior conviction. *See Nelson v. Campbell*, 541 U.S. 637, 647 (2004) ("[W]e were careful in *Heck* to stress the importance of the term 'necessarily.'").

The United States Supreme Court has addressed the matter of the application of *Heck* to a state prisoner's retaliation claim in a case that is instructive in this instance. In *Muhammad v. Close*, 540 U.S. 749 (2004), Muhammad, a state prisoner, was charged by a prison guard with violating a prison rule prohibiting "[t]hreatening [b]ehavior." *Id*. at 752. Muhammad was convicted of the lesser offense of insolence, resulting in an additional seven days of detention for Muhammad and a thirty-day loss of privileges. *See id*. at 752-53. Muhammad sued under 42 U.S.C. § 1983, alleging that the charge was in retaliation for prior lawsuits and grievances that he had pursued against the guard who charged him. In finding that Muhammad's case was not barred by *Heck*, the Court held that *Heck* does not apply "categorically to all suits challenging prison disciplinary proceedings" and explained that, if a suit does not "raise any implication about the validity of the underlying conviction," the *Heck* bar is not triggered. *Id*. at 754. The Court found that Muhammad was not challenging the validity of his conviction for insolence; indeed, the Court noted, by claiming that the insolence charge was brought in retaliation for the exercise of First Amendment rights, "Muhammad conceded that the insolence determination was justified." *Id*. at 753. In this case, by contrast, if Antoine takes the position that he never made the remark for which he was charged on September 8, 2005, then this claim plainly is inconsistent with the validity of Antoine's disciplinary conviction, triggering the *Heck* bar. Antoine's only federal remedy for the allegedly improper disciplinary sentence at issue then would be a petition for a writ of habeas corpus. In *Heck* the Court explained,

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or

called into question by a federal court's issuance of a writ of habeas corpus . . . [pursuant to] 28 U.S.C. § 2254.

512 U.S. at 486-87. *See also Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973) (the exclusive federal remedy for a state prisoner's challenge to the fact or duration of the prisoner's confinement is habeas corpus).[6]

By the same token, if it is Antoine's position that in fact he made the remark that provoked the disciplinary ticket that Robertson issued to Antoine on September 8, 2005, and that it was actionable retaliation for Robertson to discipline him, Antoine, for the remark, then this requires the Court to determine whether the remark is, as a matter of law, speech protected by the First Amendment. In general, of course, "prison officials have broad discretion to regulate prisoners' speech when consistent with 'legitimate penological interests.'" *Watkins v. Kasper*, 599 F.3d 791, 796 (7th Cir. 2010) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Correspondingly, while a prisoner has a First Amendment right to complain about the conditions of his or her confinement, the prisoner "must do so 'in a *manner* consistent with his status as a prisoner.'" *Id*. at 797 (quoting *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 864 (5th Cir. 2004)) (emphasis in original). Thus, "[i]nsubordinate remarks that are 'inconsistent with the inmate's status as a prisoner or with the legitimate penological objectives of the corrections system' are not protected" by the

---

6. This does not mean, of course, that this Court is authorized to construe Antoine's complaint under 42 U.S.C. § 1983 as a petition under 28 U.S.C. § 2254, in part or in whole. "[W]hen a suit that should have been prosecuted under the habeas corpus statute is prosecuted as a civil rights suit instead, it should not be 'converted' into a habeas corpus suit and decided on the merits." *Pischke v. Litscher*, 178 F.3d 497, 500 (7th Cir. 1999). Instead, the civil rights suit "should simply be dismissed, leaving to the prisoner to decide whether to refile it as a petition for habeas corpus. The reasons are various, and include the fact that habeas corpus for state prisoners requires exhaustion of state remedies and that prisoners generally are limited to seeking federal habeas corpus only once." *Id*.

First Amendment and therefore cannot form the basis for a claim of unlawful retaliation. *Id.* (quoting *Smith v. Mosley*, 532 F.3d 1270, 1277 (11th Cir. 2008)). In determining whether a prisoner's speech is protected, relevant considerations include "the impact" of accommodating the prisoner's speech and the availability of "alternative means" for a prisoner to express complaints about the conditions of his or her confinement, as well as whether the response of a prison official to a prisoner's speech is "rationally related to . . . legitimate penological interests." *Id.* (citing *Turner*, 482 U.S. at 89-90).

Applying the relevant factors in this case, the Court has little difficulty concluding that the remark for which Antoine was issued a disciplinary ticket on September 8, 2005, was not speech protected by the First Amendment. In general, "insolence," under IDOC regulations, means "talking, touching, gesturing or other behavior that harasses, annoys, or shows disrespect." *Hale v. Scott*, 371 F.3d 917, 918 (7th Cir. 2004) (quoting Ill. Admin. Code tit. 20, § 504(304).App. A). Antoine's remark, though arguably not threatening or coercive because the prisoner acknowledged that he would be taken to segregation regardless of what he said, nonetheless was harassing and disrespectful. The remark plainly was intended to put Robertson on notice that, as revenge for the shakedown of Antoine's cell the previous day, Antoine intended to subject Robertson to the annoyance and expense of defending a lawsuit in federal court. With respect to the impact of accommodating the speech at issue, it is settled that disrespectful, insubordinate speech by prisoners "has a direct tendency to undermine 'the reasonable considerations of penal management[.]'" *Craig v. Franke*, 478 F. Supp. 19, 21 (E.D. Wis. 1979) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132 (1977)). *See also Goff v. Dailey*, 991 F.2d 1437, 1439 (8th Cir. 1993) (a prison has a legitimate penological interest in preventing prisoners from "mocking

and challenging correctional officers" in the presence of other prisoners). Thus, the impact of accommodating Antoine's disrespectful speech is great. As to whether alternative means were available for Antoine to voice his complaints, obviously Antoine could have brought (and in fact eventually did bring) a grievance against Robertson, instead of confronting Robertson in person vocally and in public on a gallery at Menard. *See Watkins*, 599 F.3d at 797 ("Instead of openly criticizing [the defendant's] directives during a meeting with other law clerks, [the plaintiff] could have taken the less disruptive approach of filing a written complaint."); *Freeman*, 369 F.3d at 864 (a prisoner's "public rebuke" to a prison chaplain that "was intended to, and did, incite about 50 other prisoners in a walkout from [a] church service" was not protected speech). Finally, Robertson's action in writing a disciplinary ticket to Antoine for the prisoner's disrespectful remark was rationally related to the IDOC's legitimate penological interest in prohibiting expressions of disrespect for IDOC personnel by IDOC prisoners. Antoine's remark obviously was a confrontational, insubordinate statement that Antoine intended to sue Robertson for subjecting Antoine to legitimate discipline for possessing contraband. A prisoner's complaints about prison conditions that are voiced in a "confrontational, disorderly manner" do not enjoy First Amendment protection. *Watkins*, 599 F.3d at 798. So too in this case. Antoine's remark was an act of verbal disobedience to Robertson's order for Antoine to proceed to segregation and, as a matter of law, the remark is not entitled to First Amendment protection. The Court will grant summary judgment on Antoine's claims in this case.[7]

---

7. Because the Court finds that Antoine has failed to show any violation of his constitutional rights by Ramos, McDaniel, Robertson, and Bradley, it is unnecessary for the Court to consider whether Defendants are entitled to qualified immunity on Antoine's claims in this case. *See Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997). Accordingly, the Court does not reach the qualified immunity issue.

## III. Conclusion

The motion for summary judgment brought by Ramos, McDaniel, Robertson, and Bradley (Doc. 43) is **GRANTED**.  This case is **DISMISSED with prejudice**.  The Clerk of Court will enter judgment in accordance with this Order.

**IT IS SO ORDERED.**

DATED:  March 3, 2011

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge