IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NATHAN ANTOINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 3:07-cv-453-DGW |
| ROBERT M. ROBERTSON, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER FOLLOWING BENCH TRIAL**

**WILKERSON, Magistrate Judge:**

Plaintiff Nathan Antoine, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit on June 25, 2007 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). After an initial screening of Plaintiff's Complaint on July 27, 2009, Plaintiff was allowed to proceed in this action on one count of retaliation against Defendants C/O Bradley, Charles McDaniel, Anthony Ramos, and Robert Robertson (Doc. 8). On March 3, 2011, District Judge G. Patrick Murphy granted summary judgment for Defendants and dismissed Plaintiff's action with prejudice and judgment was entered accordingly (Docs. 90 and 91). Plaintiff appealed the dismissal (Doc. 94) and the Seventh Circuit Court of Appeals vacated the judgment as to Defendant Robert M. Robertson and remanded the case for further proceedings on the claim that Defendant Robertson retaliated against Plaintiff by falsifying a disciplinary ticket issued on September 8, 2005 (Doc. 107-1).

Accordingly, this matter was remanded back to this Court on December 27, 2012 and a new scheduling order was subsequently entered. Following consent of the parties, the Court held a bench trial in this matter on October 19, 2015. Having considered the evidence introduced and

the legal arguments made at the one-day bench trial, the Court makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

Plaintiff Nathan Antoine brings this action pursuant to 42 U.S.C. § 1983 alleging that Defendant Robert M. Robertson, a correctional officer at Menard at all times relevant, retaliated against him by issuing a disciplinary report on September 8, 2005 because Plaintiff filed grievances complaining of the living conditions in his gallery.

Plaintiff's claim stems from his incarceration on Galleries Five and Six in the North One Cell House, where he was housed from approximately February 2005 until September 8, 2005 (Transcript of Proceedings, Part 1, Doc. 191, p. 26). During this time, Plaintiff experienced unsanitary living conditions and complained about an accumulation of dust, dirt, and insects that was exacerbating his chronic obstructive pulmonary disease ("COPD") and causing him to cough up blood and suffer from nose bleeds (Doc. 191, pp. 12-13). More specifically, while Plaintiff was housed on Six Gallery in the North One cell house, he filed at least two grievances complaining about his living conditions (*see* Plaintiff's Exhibits 1 and 3). The first of which was dated July 22, 2005 wherein Plaintiff indicated he had submitted prior grievances complaining about inadequate sanitation and inadequate ventilation in his cell house (Pl.'s Ex. 1). The second grievance before the Court was dated September 4, 2005 wherein Plaintiff complained about the persistent hazardous conditions in his cell house, including the accumulation of dust, dirt, and insects in the "tunnel area" (Pl.'s Ex. 3). Plaintiff's September 4, 2005 grievance was received by Counselor Barbara Mueller on September 6, 2005 and she responded indicating that she "spoke with cell house supervisor" and "[i]nspections are done monthly to ensure cell house is clean" (*Id.*). Counselor Mueller was unable to recall who she spoke with concerning Plaintiff's

complaints (*see* Transcript of Proceedings, Part 2, Doc. 192, p. 31); however, Counselor Mueller testified that she may have spoken to a sergeant, lieutenant, major, captain, or maintenance, or, if the gallery officer would have information responsive to the issue, possibly that individual (Doc. 192, pp. 31, 33).

Importantly, at all times relevant to this lawsuit, Plaintiff's gallery officer on Six Gallery in the North One Cell House was Defendant Robert M. Robertson (Doc. 192, p. 2). Defendant's job duties included ensuring the cleanliness of Gallery Six (Doc. 191, p. 43). In order to perform this job function, Defendant often oversaw the work of inmate gallery workers, who were directed to sweep, mop, and clean up any trash (Doc. 191, p. 43). Defendant testified that he could not recall whether Counselor Mueller spoke with him regarding Plaintiff's aforementioned September 4, 2005 grievance (Doc. 191, p. 55). On September 7, 2005, soon after Plaintiff filed said grievance, Defendant Robertson and another officer, Officer Bradley, conducted a shakedown of Plaintiff's cell (Doc. 191, pp. 17, 55). Plaintiff and his cellmate were taken to a shower area while Defendant and Officer Bradley searched the cell for contraband (*see* Doc. 191, pp. 17-18). Following the search of Plaintiff's cell, Defendant informed Plaintiff that he had confiscated a needle and some paperwork that did not belong to Plaintiff (Doc. 191, p. 18; Doc. 192, p. 6). Plaintiff testified that upon finding these items, Defendant told Plaintiff "I finally got your grievance filing ass" (Doc. 191, p. 18). Another inmate, James Brimmer, who was a gallery worker in close proximity at the time, corroborated Plaintiff's testimony concerning this interaction (*see* Doc. 192, pp. 19-20). However, Defendant testified that he never made any such statement to Plaintiff (Doc. 191, p. 57).

Upon finding the contraband in Plaintiff's cell, Defendant issued a disciplinary ticket for "211 Possession or Solicitation of Unauthorized Personal Information and 308 Unauthorized

Property" (*see* Def.'s Ex. 1).  On the following day, September 8, 2005, Defendant Robertson came by Plaintiff's cell and ordered him to pack up his property as he was being taken to segregation on account of the aforementioned incident (Doc. 191, p. 20; Doc. 192, p. 7).  The account of what took place when Defendant Robertson came to escort Plaintiff to segregation is disputed.  Plaintiff testified that he asked Defendant if he could speak with Brad Thomas from internal affairs, to which Defendant told him he would not be speaking to anyone, he was going to segregation (Doc. 191, p. 20).  According to Plaintiff, Defendant then cuffed him up and took him out of the cell and, as he was making his way down the gallery, Defendant told Plaintiff that he was "going to die in prison" (Doc. 191, pp. 20-21).  Defendant's testimony elicits a much different picture of what occurred when he came to escort Plaintiff to segregation.  First, Defendant denies telling Plaintiff he is going to die in prison (Doc. 192, p. 9).  Moreover, Defendant testified that when he asked Plaintiff if his property was packed Plaintiff responded that he knew he was going to segregation and "you're gonna read all about it" (Doc. 192, p. 8).  Defendant responded by asking Plaintiff if that meant he was going to sue Defendant and Plaintiff indicated in the affirmative by stating "you and the rest of the people behind this" (Doc. 191, pp. 62-63, *see also* Def.'s Ex. 2).  Defendant testified that he perceived Plaintiff's statements as a threat (Doc. 191, p. 63).  Plaintiff denies making any such statement (Doc. 191, pp. 21-22).  Plaintiff, however, was issued a disciplinary ticket for intimidation and threats while he was in segregation, which ticket resulted in an additional thirty days in segregation (Doc. 191, pp. 22-23).

## CONCLUSIONS OF LAW

Plaintiff claims that Defendant Robertson violated his First Amendment rights during his incarceration at Menard by retaliating against him for filing grievances complaining about the living conditions in his cell house.  In particular, Plaintiff asserts Defendant issued a false

disciplinary ticket on September 8, 2005 against him that resulted in his placement in segregation for thirty days.

The Seventh Circuit has articulated that for a plaintiff to prevail on a First Amendment retaliation claim, he must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)) (other citations omitted).

In this case, the evidence demonstrates that Plaintiff filed a grievance on September 4, 2005 and the filing of such is an activity protected by the First Amendment. *See Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). The evidence also demonstrates that soon after filing said grievance Plaintiff's cell was shaken down, contraband was confiscated and he was sent to segregation, and he was issued a subsequent disciplinary ticket for threatening his gallery officer, Defendant Robertson, which resulted in an additional thirty days of segregation. The Court finds that the punishment inflicted on Plaintiff could deter First Amendment activity. Finally, in order to prove his claim, the Court must also find that Defendant's actions were motivated, at least in part, by Plaintiff's filing grievances. Upon review of the evidence and the testimony at the bench trial, the Court finds that Plaintiff made such a showing. Specifically, the Court finds Plaintiff's testimony credible concerning this issue insofar as it was corroborated by James Brimmer, an inmate who was a gallery worker at the time (and is no longer incarcerated at the same institution as Plaintiff) who testified that he heard Defendant Robertson state that he finally got "his grievance filing ass" when referring to Plaintiff. Moreover, the Court finds that Counselor Mueller's testimony was not credible as to whom she spoke with concerning the September 4, 2005

grievance when she indicated she would not have spoken to the gallery officer concerning Plaintiff's complaints about cleanliness.  Particularly, the Court finds that Ms. Mueller's trial testimony departed from testimony given at her deposition when asked who she would speak with after receiving a grievance concerning the cleanliness of a gallery.   Importantly, at her deposition, Ms. Mueller indicated she might speak with the gallery officer; however, at trial, she denied this would be a possibility.

While the Court finds that Plaintiff has proven the necessary elements of his retaliation claim, the Court's inquiry does not end here.   The Seventh Circuit Court of Appeals instructs that once a plaintiff makes a prima facie showing of causation on a retaliation claim, the defendant can rebut, but only by showing that his conduct was not a necessary condition of the harm — mainly, that the harm would have occurred anyway.  *Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013) (citing *Green v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011) and *Spiegla v. Hull*, 371 F.3d 928, 941-43 (7th Cir. 2004)).  The Court finds that Defendant has rebutted Plaintiff's prima facie showing of causation as the undersigned is convinced that the adverse action Plaintiff complains of — being issued a disciplinary ticket on September 8, 2005 for threats/intimidation — would have occurred regardless of any retaliatory motive.

Specifically, the Court finds Defendant Robertson credible in his assertion that, when asked if Plaintiff's property was packed, Plaintiff responded that he knew he was going to segregation and "you're gonna read all about it."   As testified to by Defendant, and memorialized in the September 8, 2005 disciplinary report, when asked by Defendant if that meant Plaintiff was going to sue Defendant, Plaintiff responded in the affirmative.  In support of this finding, the Court notes that this ticket was heard by an independent adjustment committee and Plaintiff was found guilty of the charge.  Moreover, it is well established that Plaintiff was a cell house lawyer,

or "litigator" during the relevant time period. Indeed, James Brimmer, Eric Reid, and Randy Brown all testified to such during the trial. Accordingly, it is cogent that Plaintiff would have reacted to Defendant escorting him to segregation in the manner in which Defendant testified. While the Court acknowledges that Eric Reid's testimony corroborated Plaintiff's version of events, the Court did not find said testimony credible, especially in light of the fact that both Plaintiff and Mr. Reid are currently housed at Stateville Correctional Center and they have seen each other since the incident at issue.

Thus, the Court finds that Defendant did not write a *false* disciplinary report against Plaintiff on September 8, 2005 and the disciplinary report would have been written regardless of any retaliatory motive.

## CONCLUSION

Based on all of the foregoing, the Court finds that Defendant Robertson did not retaliate against Plaintiff in violation of his First Amendment rights. Accordingly, the Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiff, and close this case on the Court's docket. Plaintiff shall take nothing from this action. Further, per the Court's Order on March 24, 2014, Attorney Eric Martin was appointed to represent Plaintiff in this matter in this Court only (Doc. 132). Since the trial has concluded and judgment is to be entered, counsel may seek leave to withdraw from this matter; provided, however, that he files a notice with the Court indicating he has fully advised Plaintiff of his appellate rights and the basic procedure for any appeal.

**IT IS SO ORDERED.**

DATED: March 31, 2016

**DONALD G. WILKERSON**
**United States Magistrate Judge**